# Illinois Official Reports

## Appellate Court

---

**People v. Csaszar, 2017 IL App (1st) 100467-B**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARTIN CSASZAR, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-0467 |
| Filed | February 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CR-1274; the Hon. Catherine K. Haberkorn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Anne E. Carlson, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case comes before us on remand from our supreme court, which instructed us to vacate our original judgment and reconsider the case in light of *People v. Cotto*, 2016 IL 119006. After a bench trial, the trial court found Martin Csaszar guilty of solicitation of murder for hire (720 ILCS 5/8-1.2 (West 1998)) and sentenced him to 30 years in prison. With the assistance of retained counsel, Csaszar filed a postconviction petition in 2008. The trial court granted the State's motion to dismiss the petition without an evidentiary hearing. On appeal, Csaszar argues only that his retained counsel did not provide reasonable assistance with postconviction proceedings. We affirm.

¶ 2                                    BACKGROUND

¶ 3    In 1997, Monica Crisan hired Csaszar to drive a truck for Livdimon Enterprise Corporation. Csaszar's employment ended in April 1998. Crisan invited Csaszar to come to her home to pick up his final paycheck on May 3, 1998. Crisan deducted from Csaszar's wages an amount for damage to Livdimon's truck. The amount of the paycheck upset Csaszar. After Csaszar left Crisan's home, Crisan called police to report that Csaszar pulled out a gun and threatened her. Police arrested Csaszar and charged him with aggravated assault and unlawful use of a weapon. The trial court continued proceedings on the charges through 1998 and 1999.

¶ 4    Csaszar found work driving a truck for Jakacki Bag and Barrel Company. There he met James Anderson, who worked as a security officer for Jakacki. In 1999, Csaszar told Anderson about the criminal charges Crisan initiated against him. On December 16, 1999, the day before a hearing on the charges, Csaszar met with Anderson and Mark Shaffer. In a tape-recorded conversation, Csaszar gave Shaffer $500 in exchange for Shaffer's promise to kill Crisan. Shaffer, an undercover agent working for the Bureau of Alcohol, Tobacco and Firearms (ATF), gave a prearranged signal to Chicago police officers once Csaszar gave him the cash. The officers arrested Csaszar, and prosecutors charged him with soliciting Shaffer and Anderson to murder Crisan. Csaszar spoke with an officer and an assistant State's Attorney at the police station, but he did not sign any statement.

¶ 5    Before trial, defense counsel requested a behavioral clinical examination to evaluate Csaszar's fitness to stand trial. The trial court granted the request. The psychiatrist who interviewed Csaszar found him fit to stand trial and legally sane at the time of the offense.

¶ 6    At the bench trial, Crisan testified that on May 3, 1998, after she gave Csaszar the paycheck he considered inadequate, he pulled out a gun and pointed it at her. As she looked for a phone, Csaszar said, "You want to call 9-1-1. *** By the time they will arrive, you'll be dead." Some neighbors passed by her home, and Csaszar ran off.

¶ 7    Anderson testified that Csaszar asked him to kill Crisan. When Anderson refused, Csaszar asked him to find someone else to kill Crisan. Anderson contacted an agent he knew who worked for ATF. That agent arranged for Shaffer to pose as a hitman and for recording of further contacts between Anderson, Shaffer, and Csaszar.

¶ 8    Assistant State's Attorney Fabio Valentini testified that Csaszar admitted he wanted Crisan dead because she brought charges against him. He had the idea of hiring a hitman, and he asked Anderson to help him.

¶ 9     Csaszar testified that Anderson sought out Csaszar's company and offered to help him with several problems. When Csaszar told Anderson about the criminal charges, Anderson suggested killing Crisan. Anderson arranged for the hitman. Csaszar could not explain why he met with Anderson and Shaffer, and why he said what he said in the recorded conversation.

¶ 10    The trial court found Csaszar guilty of soliciting Shaffer to murder Crisan for hire and sentenced him to 30 years in prison. The appellate court affirmed the trial court's judgment. *People v. Csaszar*, 375 Ill. App. 3d 929 (2007).

¶ 11    In 2006, Csaszar drafted a postconviction petition, but he never filed it. Instead, in 2007, he hired an attorney to prepare a postconviction petition for him. He sent the attorney his draft. In the draft, he claimed that the State tampered with the videotape of his conversation with Shaffer and Anderson. Csaszar said, in an affidavit, that he tried to back away from the deal, but Shaffer said that if Csaszar made him come all the way to the meeting for nothing, Shaffer would kill Csaszar and Csaszar's family. Csaszar said that an inexplicable light appeared on the videotape, showing where the State cut several seconds from the conversation, despite the lack of any gap in the time signature shown on the tape.

¶ 12    On May 28, 2008, Csaszar's retained counsel filed a postconviction petition in which he contended that at the time of the offense, Csaszar's medications and depression left him unable to understand his own actions; Csaszar was not fit to stand trial; and his trial counsel provided ineffective assistance. Counsel for the postconviction proceedings specified four ways in which trial counsel provided ineffective assistance: (1) counsel did not obtain an assessment of Csaszar's fitness to stand trial; (2) counsel did not obtain an assessment of Csaszar's mental health at the time of the offense; (3) counsel did not find out whether Csaszar understood his right to a jury trial; and (4) counsel failed to present evidence to show entrapment. Counsel supported the petition with affidavits from Csaszar's mother, sister, and ex-wife concerning Csaszar's mental health, a letter from a psychiatrist about the effects of Csaszar's medications, and an affidavit from Csaszar. Counsel sent Csaszar a letter in which he explained that he omitted the allegation about tampering with the videotape because he and Csaszar's sister watched the videotape and saw no indication of tampering.

¶ 13    The trial court permitted the State to file a motion to dismiss the petition. The trial court granted the motion to dismiss. Csaszar now appeals.

¶ 14                                    ANALYSIS

¶ 15    Csaszar does not contest the trial court's decision to dismiss his postconviction petition. Instead, on this appeal, he argues only that his privately retained counsel did not provide the reasonable level of assistance required for postconviction proceedings. In particular, Csaszar claims that competent counsel should have further investigated the claim Csaszar made in his draft postconviction petition, that the State tampered with the videotape of his conversation with Shaffer. The State responds that Csaszar had no constitutional right to the assistance of counsel in postconviction proceedings, and no statute or rule required a reasonable level of assistance from privately retained counsel.

¶ 16    In our original disposition of this appeal, we agreed with the State. Following *People v. Kegel*, 392 Ill. App. 3d 538, 540-41 (2009), we held that although Csaszar's counsel had a duty to provide professional assistance, the State, including the courts, bore no responsibility for assuring that Csaszar received reasonable assistance from his privately retained attorney.

¶ 17    In *Cotto*, our supreme court held that "there is no difference between appointed and privately retained counsel in applying the reasonable level of assistance standard to postconviction proceedings" (*Cotto*, 2016 IL 119006, ¶ 42) and that if a defendant does not receive reasonable assistance from his privately retained postconviction counsel, the courts must reverse the postconviction ruling and remand for the defendant to receive reasonable assistance. Thus, we must now decide whether Csaszar's privately retained counsel provided a "reasonable level of assistance." *Cotto*, 2016 IL 119006, ¶ 41.

¶ 18    Postconviction counsel's duties to provide reasonable assistance "include consultation with the defendant to ascertain his contentions of deprivation of constitutional right, examination of the record of the proceedings at the trial, and amendment of the petition, if necessary, to ensure that defendant's contentions are adequately presented. [Citation.] Fulfillment of the third obligation does not require counsel to advance frivolous or spurious claims on defendant's behalf." *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Illinois Supreme Court Rule 651 (eff. Feb. 6, 2013) establishes the duties for appointed postconviction counsel. See *Pendleton*, 223 Ill. 2d at 472.

¶ 19    Postconviction counsel filed a statement of compliance with the duties stated in Rule 651. The record on appeal shows that postconviction counsel consulted with Csaszar and Csaszar's family to find grounds for a postconviction petition. Postconviction counsel examined the record and read the draft of a postconviction petition that Csaszar prepared. Postconviction counsel chose not to raise the issues Csaszar sought to raise in his draft petition, as counsel found those issues meritless.

¶ 20    Csaszar argues primarily that his privately retained counsel should have included in the postconviction petition a claim that "the surveillance videotape played at his trial had been edited so as to delete a critical portion of the meeting between himself, James Anderson, and Agent Shaffer and that his trial attorneys had been ineffective for failing to challenge the redacted tape." Counsel told Csaszar that he omitted the claim because he watched the videotape and saw no evidence of tampering, and Csaszar's sister also watched the videotape and saw no evidence of tampering. We see no grounds in this record to disbelieve counsel's statement that the surveillance videotape did not substantiate Csaszar's claim. Csaszar has not shown that competent counsel would have advanced nonfrivolous claims other than the claims presented by postconviction counsel. Thus, Csaszar has not shown that his postconviction counsel failed to provide a reasonable level of assistance. Accordingly, we affirm the dismissal of Csaszar's postconviction petition.

¶ 21                                    CONCLUSION

¶ 22    Because Csaszar has not shown that his privately retained postconviction counsel failed to provide a reasonable level of assistance, we affirm the trial court's judgment dismissing Csaszar's postconviction petition.

¶ 23    Affirmed.